UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELIZABETH M. M.[1], | |
| Plaintiff, | |
| v. | CASE NO. 3:21-CV-00075-MGG |
| COMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Elizabeth M. M. ("Ms. M") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court REMANDS the decision of the Commissioner of the Social Security Administration ("SSA").

**I.   OVERVIEW OF THE CASE**

Ms. M applied for DIB and SSI on July 15, 2019, alleging a disability onset date of December 7, 2018. Ms. M's applications for DIB and SSI were denied initially on September 10, 2019, and upon reconsideration on January 7, 2020. Following a hearing on August 12, 2020, the Administrative Law Judge ("ALJ") issued a decision on September 4, 2020, affirming the SSA's denial of benefits.

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

The ALJ found that Ms. M suffered from severe impairments of degenerative disc disease of the lumbar spine; fibromyalgia; osteoarthritis of the bilateral knees; hypertension; and osteoarthritis of the right hip. The ALJ found that none of Ms. M's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. M has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but with certain additional limitations. The ALJ noted that Ms. M has previous relevant work as a customer service worker. In view of Ms. M's RFC, the ALJ found that she can perform her past relevant work as a customer service worker, both as actually performed and as generally performed. Based upon these findings, the ALJ found that Ms. M is not disabled within the meaning of the Act and denied her request for DIB and SSI benefits.

## II. Disability standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's five-step inquiry in evaluating claims for DIB and SSI includes determinations as to: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the

2

claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920.[2] The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g) but its role is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v.*

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

*Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record, he must provide a "logical bridge" from the evidence of record to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

### IV.  ANALYSIS

In challenging the ALJ's decision, Ms. M argues that (A) the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Nurse Practitioner ("NP") Kottkamp as required by agency regulations; and (B) the ALJ's Step Three Listing analysis is not supported by substantial evidence because he failed to obtain a medical expert opinion when determining whether Ms. M's fibromyalgia medically equalled Listing 14.09D.

#### A. NP Kottkamp's Opinions

For claims filed after March 27, 2017, such as Ms. M's claim, the rules dictating how an ALJ is to weigh medical opinion evidence are set out in 20 C.F.R. § 404.1520c. The regulations require an ALJ to determine how persuasive a medical source's opinion is upon analysis of the following factors: supportability; consistency; relationship with

the claimant—including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)–(5). The most important factors when assessing the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). To assess the supportability of a medical source opinion, the ALJ evaluates objective medical evidence and supporting explanations directly from the opining medical source. 20 C.F.R. § 404.1520c(c)(1). Consistency, on the other hand, requires the ALJ's review of evidence from other medical sources and nonmedical sources and comparison to the medical source opinion. 20 C.F.R. § 404.1520c(c)(2). The ALJ must "explain how [he] considered the supportability and consistency factors," but is not required to explain how he considered the other factors if they are not relevant to the decision. *Id.* Additionally, the law does not require the ALJ to discuss every detail in the record, as long as he considers evidence in the record that was favorable to the claimant. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

      Here, the ALJ discussed two opinions from Ms. M's treating medical provider, NP Kottkamp, who began treating Ms. M in December 2014 with special attention to her fibromyalgia and depression through 2019 and 2020. First, the ALJ appropriately dispensed with NP Kottkamp's opinion letter dated September 10, 2019, which merely stated that Ms. M was "[n]ot able to return to work . . . . due to her physical condition." [DE 15 at 387]. Statements that a claimant is disabled or unable to work—even such statements from treating medical providers like NP Kottkamp—are neither valuable nor

5

persuasive as the determination or decision of whether a claimant is disabled and unable to work under the Act is reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i).

Second, the ALJ discussed the Physical Assessment-Questionnaire Form completed by NP Kottkamp on July 9, 2020, as part of Ms. M's disability application process. Through the Form, NP Kottkamp opined about Ms. M's ability to work and her various work limitations. Specifically, NP Kottkamp opined that Ms. M's impairments prevented her from standing or sitting upright for 6–8 hours at a time and that she could only stand for 10-15 minutes at a time, for one hour total in an eight-hour workday; and sit upright for 30 minutes at a time, for three hours total in an eight-hour workday. [DE 15 at 502]. NP Kottkamp explained that Ms. M's widespread joint pain and leg swelling when standing prevented her from sitting or standing for 6-8 hours a day noting also that Ms. M must "regularly ice and elevate [her] lower extremities." [*Id.*]. NP Kottkamp further explained that Ms. M's back pain, neuropathic pain, joint pain, and fatigue prevent her from being upright and necessitate she lay down with her legs elevated. [*Id.*]. NP Kottkamp then concluded that Ms. M was not capable of sustaining work on a continuing basis noting that previous part-time work dramatically increased her pain and inflammation and caused her health to "deteriorate[] markedly" such that work "is not sustainable or advisable for long term health." [*Id.* at 503].

In assessing NP Kottkamp's 2020 opinion, the ALJ started by stating that the opinion "is not consistent with the record as [a] whole" and then addressed parts of the opinion before finding that NP Kottkamp's 2020 opinion was not persuasive. [*Id.* at 27–

6

28]. The ALJ does not explicitly differentiate his supportability analysis from his consistency analysis. However, his discussion of NP Kottkamp's 2020 opinion cites evidence from both NP Kottkamp's treatment records and other sources, including treatment records from primary care provider Ralph Inabnit, M.D.[3] in 2020 and orthopedist William Paulson, M.D. in 2018. Therefore, the ALJ appears to have considered the supportability and consistency factors in finding NP Kottkamp's 2020 opinion unpersuasive. Ms. M, however, asserts that the ALJ erred by failing to provide an adequate explanation of his findings related to NP Kottkamp's opinion as required by 20 C.F.R. § 404.1520c(b)(2). Ms. M challenges the ALJ's explanation of his consideration of the supportability and consistency factors and alleges that the ALJ mischaracterized NP Kottkamp's 2020 opinion with the general statement that Ms. M is "close to bedridden." [DE 15 at 27]. As a result, Ms. M argues that the ALJ's hypothetical questions to the vocational expert were based on an RFC lacking necessary limitations on Ms. M's ability to sit or stand during the day without elevating her legs.

1. **Supportability and Consistency**

In his decision, the ALJ found that the sit, stand, and leg elevation limitations opined by NP Kottkamp were extreme based on the record. In the following three sentences, the ALJ attempted to explain his rationale.

> [NP Kottkamp] described the claimant as being close to bedridden, including being unable to stand for more than an hour and sit for three [h]ours in a standard eight hour workday. This would mean that the claimant would need to spend at least half the day lying down, but her treatment has been conservative for the most part and the record does not

---

[3] On December 17, 2019, Dr. Inabnit also provided a consultative examiner's report regarding Ms. M.

7

> document such a severe limitation. [NP Kottkamp] indicated that the claimant needs to elevate her legs and some records do indicate that the claimant has some edema, but most records indicate that she does not have edema. (Exhibits 10F/5, 8 15, 19; 9F/26; 8F/5; 6F/33, 39, 46, 54, 61, 68, 74; 1F/12, 15).

[DE 15 at 27]. Ms. M argues that this explanation does not satisfy the regulatory explanation requirement because it does not account for evidence in the record validating the limitations opined by NP Kottkamp.

In support, Ms. M directs the Court's attention to her own reports to NP Kottkamp and Dr. Inabnit of joint pain, tenderness, and swelling exacerbated by activity as well as NP Kottkamp's and Dr. Inabnit's similar findings upon physical examination. Ms. M also emphasizes her knee x-rays from December 2019 as evidence of her limitations. In other parts of his decision, the ALJ acknowledges Ms. M's subjective symptom allegations and the December 2019 x-rays. However, the ALJ's paragraph assessing the persuasiveness of NP Kottkamp's opinion does not mention Ms. M's subjective symptoms, the physical findings of NP Kottkamp and Dr. Inabnit, or the x-rays. The ALJ does cite to some of the same medical records Ms. M relies upon but only for their reference to edema. Therefore, the ALJ's decision does not clearly explain how NP Kottkamp's opinion as to Ms. M's sit and stand limitations are not supported by her own records or are inconsistent with the record as a whole.

Moreover, the ALJ does not account for the subjective nature of fibromyalgia in explaining the supportability and consistency of NP Kottkamp's opinion. As the Seventh Circuit has noted, the "cause or causes [of fibromyalgia] are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely

subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). In *Sarchet*, the court also chastised the ALJ for "depreciat[ing] the gravity of [the claimant's] fibromyalgia because of the lack of any evidence of objectively discernible symptoms. . . ." *Id*. At 307. While it is possible here that the ALJ assessed Ms. M's subjective fibromyalgia symptoms in considering the persuasiveness of NP Kottkamp's 2020 opinion, the ALJ's decision does not explain how he connected Ms. M's subjective symptoms to his supportability or consistency analyses leaving the Court to speculate as to his rationale for discounting NP Kottkamp's opinion.

Furthermore, in explaining the supportability and consistency of NP Kottkamp's 2020 opinion, the ALJ noted the sit and stand restrictions identified by NP Kottkamp then summarized her opinion describing Ms. M "as being close to bedridden" and requiring her "to spend at least half the day lying down." [DE 15 at 27]. To clarify, NP Kottkamp did not explicitly opine that Ms. M is bedridden or must lie down half the day. The ALJ, however, made this inference and then related it to Ms. M's mostly conservative treatment and noted that "the record does not document such a severe limitation." [*Id.*]. As noted earlier in the ALJ's RFC analysis, Ms. M had been treated with steroid injections into the knees, physical therapy, Voltaren gel[4], icing, and other pain medication but did not undergo surgery to address her impairments. [*Id.* At 26].

---

[4] Voltaren gel, previously a prescription product, is now an over-the-counter topical nonsteroidal anti-inflammatory gel used to reduce arthritis pain. VOLTAREN, https://www.voltarengel.com/what-is-voltaren/ (last visited Mar. 23, 2023).

Treatment history, which is part of the record as a whole, is a reasonable factor for an ALJ to consider in determining an RFC or assessing the persuasiveness of a medical opinion. Here, however, the ALJ does not explain how Ms. M's non-surgical treatment, including treatment for pain and fibromyalgia for which there is limited or no objective evidence obtainable to document those impairments, is inconsistent with the limitations opined by NP Kottkamp in her 2020 opinion. As a result, one wonders if the ALJ may actually be substituting his own lay opinion for NP Kottkamp's about how Ms. M's impairments should have been treated. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). Additionally, the ALJ may be splitting hairs unfairly by discounting NP Kottkamp's comments about Ms. M's need to lay down because her treatment notes do not explicitly prescribe laying down during the day. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Regardless, the ALJ erred by not explaining the relationship between Ms. M's conservative treatment and NP Kottkamp's statement that she must lay down during the day.

Similarly, the ALJ's sentence explaining the alleged inconsistency between NP Kottkamp's opinion that Ms. M must elevate her legs and the record as a whole is lacking. The ALJ only mentions a lack of findings of edema then cites to multiple records reflecting mild inflammation of the hands and knees with few records of swelling. Notably, the cited documents reference edema, or swelling, as reported both

by Ms. M herself and by her doctors in their examination findings[5]. Yet, the ALJ has not explained why the edema records alone support finding NP Kottkamp's 2020 opinion unpersuasive. Moreover, the record includes a few positive reports from Ms. M's doctors of swelling and tenderness upon palpation, which seem to correlate with Ms. M's work activity suggesting the possibility of exacerbated symptoms upon work. Once again, the ALJ's limited explanation—this time based only upon edema generally—does not account for evidence that could be favorable to Ms. M and buttress NP Kottkamp's 2020 opinion. *See Denton*, 596 F.3d at 425. As a result, the ALJ has not effectively built a logical bridge from the evidence he cites to his conclusion that NP Kottkamp's opinion is unpersuasive. *See O'Connor-Spinner*, 627 F.3d at 618; *see also Minnick*, 775 F.3d at 935.

Beyond those three sentences, the ALJ affirmed reaching limitations opined by NP Kottkamp based on one report of reduced grip strength. While grip strength is probably related to grip strength, the ALJ has not explained that relationship well enough to allow this Court to trace his reasoning fully. *See Scott*, 297 F.3d at 595. The ALJ also concluded that NP Kottkamp's assertion that Ms. M could lift less than 5 pounds decreased the persuasiveness of her opinion because "most records indicate that she has full muscle strength." [DE 15 at 28]. The ALJ does not misrepresent the record as to muscle strength but has not explained how muscle strength alone dictates lifting limitations, especially in Ms. M's case where other symptoms reasonably arising

---

[5] The records cited by the ALJ include references to edema that are included in sections about Ms. M's cardiovascular system. Swelling is more likely referenced in the sections related to her musculoskeletal system.

from Ms. M's impairments—including but not limited to back and joint pain—could affect the extent of her ability to lift.

While the Court cannot and will not reweigh the evidence here, Ms. M has presented evidence in the record that raises questions about the ALJ's finding that NP Kottkamp's 2020 opinion is unpersuasive. *See Young*, 362 F.3d at 1001. With this evidence in the record favorable to Ms. M and NP Kottkamp, the ALJ has not supported his conclusion that NP Kottkamp's 2020 opinion is unpersuasive with substantial evidence. The ALJ's analysis of NP Kottkamp's 2020 opinion does not adequately trace his reasoning leaving Ms. M and this Court unable to do so as well. Moreover, the Court cannot discern whether the ALJ would reach the same result on remand. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Therefore, the ALJ's error in assessing Ms. M's RFC cannot be deemed harmless necessitating remand.

### 2.   Ms. M's Remaining Medical Opinion-Related Arguments

With remand imminent, Ms. M's remaining arguments in support of NP Kottkamp's 2020 opinion only require cursory review. First, Ms. M argues that the ALJ mischaracterized NP Kottkamp's 2020 opinion when he said it described her as "close to bedridden." An ALJ's mischaracterization of medical evidence compromises his decision and cannot be ignored. *Golembiewski*, 322 F.3d at 917. Therefore, the remand ALJ should use care in paraphrasing to avoid misstating the record and ignoring evidence in support of Ms. M's disability claim. *See id.* A colorful characterization of a medical opinion on its own may not constitute a mischaracterization but could if the ALJ fails to consider opined limitations. *See id.* at 916.

Second, Ms. M contends that the ALJ excluded some of her relevant limitations in his hypothetical to the vocational expert. Hypotheticals posed to a vocational expert "ordinarily must include all limitations supported by medical evidence in the record" to ensure that the vocational expert does not refer to jobs that a claimant cannot work. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). On remand, the ALJ will have the chance to present complete hypotheticals to the vocational expert based upon the limitations then defined. No further analysis of the ALJ's current RFC is therefore required.

### B. Medical Expert for Step Three Listing Analysis

In challenging the ALJ's opinion here, Ms. M also argued that the ALJ's Step Three Listing analysis, finding that Ms. M's fibromyalgia does not medically equal an approved listing, was not supported by substantial evidence because he failed to obtain a medical expert opinion on the matter. On remand, the ALJ will also be re-evaluating whether Ms. M's fibromyalgia meets or medically equals an impairment in a section or sections indicated in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii)[6]. As usual, the ALJ will be expected to comply with any requirements to consult a medical expert regarding the Step Three Listing analysis.

The Seventh Circuit recently ruled that if an ALJ believes that the evidence does not reasonably support finding an individual's impairment medically equals one of the

---

[6] As the ALJ here understood when he considered Ms. M's fibromyalgia under Listing 14.09D for inflammatory arthritis, there is no specific Listing in Appendix 1 for fibromyalgia, but the symptoms and limitations caused by fibromyalgia might satisfy the requirements of another listed impairment. *See* 20 C.F.R. § 404.1525(c)(5).

13

available Listings, the SSA does "not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). While it is true that an ALJ is required to consult a medical expert to determine that an ailment *does* medically equal a Listing under Appendix 1, they are not required to consult an expert if the ALJ believes the record *does not* reasonably support a finding of equivalence. *Id.*; *see also* SSR 17-2p, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017).

## V. CONCLUSION

For the reasons stated above, the ALJ did not support his RFC analysis with substantial evidence. Accordingly, the Court **REMANDS** the decision of the ALJ for consideration consistent with this Opinion and Order.

**SO ORDERED** this 29th day of March 2023.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge